James R. AULT, Appellant–Defendant,

v.

STATE OF Indiana, Appellee–Plaintiff.

No. 18A04–9807–PC–342.

Court of Appeals of Indiana.

Feb. 19, 1999.

---

Katharine C. Liell, Liell, McNeil & Harper, Bloomington, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellant-defendant James R. Ault appeals his sentence for Battery,[1] a Class C felony. Specifically, he argues that the trial court violated due process when it imposed a "more severe" sentence than it did for his previous conviction for Aggravated Battery,[2] a Class B felony. Furthermore, he maintains that the imposition of a restitution order to the mother of the injured infant and to the State is contrary to law.

### FACTS

The facts most favorable to the judgment reveal that Ault was entrusted with the temporary care of the two-month-old N.F., on March 8, 1995. Ault admitted shaking N.F. and seeing the baby's head move back and forth three to four times. Upon returning home, N.F.'s mother brought N.F. to the emergency room, where he was diagnosed with Shaken Baby Syndrome. He suffered retinal hemorrhaging and permanent brain damage which has left him severely retarded. N.F. takes his food through a tube in his stomach. At age three, he could not sit up, roll over or consistently hold up his head. N.F. will require full-time nursing care throughout his life. He will continually suffer from seizures, and his life expectancy is less than twenty years. In addition, N.F. will never learn to crawl, walk, or talk. As a result of his injuries, N.F. requires medical care amounting to nearly $10,000 per month. Most of N.F.'s medical expenses have been covered by Medicaid. In addition, as a result of the injuries to N.F., N.F.'s mother has had to leave her position as a respiratory therapist in order to care for her son. She has also been obliged to move to a smaller apartment and to purchase a van costing $4,500 in order to transport N.F. N.F.'s mother estimates her additional out-of-pocket expenses related to N.F.'s care to be $200 per month.

After a bench trial on October 4, 1995, Ault was found guilty of Aggravated Battery, a Class B felony. The trial court found that aggravating and mitigating circumstances balanced in this case and sentenced Ault to the presumptive sentence of ten years. Ault appealed his conviction to this court, and we affirmed in a memorandum decision. *Ault v. State*, No. 18A02–9601–CR–42, 676 N.E.2d 1109 (Ind.Ct.App., February 25, 1997). Subsequently, Ault filed a petition for post-conviction relief claiming that he had not waived his right to a jury trial. The post-conviction court granted the petition and vacated the conviction. On March 26, 1998, Ault pled guilty to Battery, a Class C felony, before the same court. There was no plea agreement. In its sentencing order, the court listed the aggravating and mitigating factors it had considered and then stated: "The Court, being even more informed now as to the nature and extent of the injury caused herein, now Finds that the aggravating circumstances outweigh the mitigating circumstances in this cause warranting an increase in the sentence to be imposed." Record at 92. The court sentenced Ault to the maximum period of eight years, awarding credit time for two years and 148 days which Ault had served. R. at 92. In addition, the court made one restitution order in favor of N.F.'s mother in the amount of $100,000, and one jointly in favor of N.F.'s mother and the State, in the amount of $350,000. Ault now appeals.

### DISCUSSION AND DECISION

#### I. MORE SEVERE PENALTY?

■ Ault argues that his aggravated sentence resulted from the trial judge's vindictiveness following Ault's successful post-conviction challenge. He points out that the trial court ordered the presumptive sentence for his first conviction and then ordered an

---

1. IND.CODE § 35–42–2–1.

2. I.C. § 35–42–2–1.5.

enhanced sentence for the lesser charge. Thus, Ault concludes that the trial court erroneously ordered a more severe penalty in the second instance.

■ We note initially our standard of review. Sentencing decisions rest within the sound discretion of the trial court. *Smith v. State*, 658 N.E.2d 910, 918 (Ind.Ct.App.1995). This court will reverse a sentence only upon a showing of manifest abuse of discretion. *Id.* Because a certain degree of subjectivity "cannot be eliminated" from the sentencing process, our supreme court has stated that it is inappropriate to substitute the opinion of an appeals court regarding sentencing for the trial court's. *Hurt v. State*, 657 N.E.2d 112, 114 (Ind.1995).

■ After a petitioner has obtained post-conviction relief, a trial court may not impose a more severe penalty when the petitioner is subsequently convicted unless it articulates reasons based upon information regarding the defendant's conduct after the time of the original sentencing.[3] The question raised in this case is whether the enhanced penalty of eight years, for a lesser offense, coupled with a restitution order, is a more severe penalty than the presumptive ten-year sentence imposed for the original, greater offense. If it is, the court's reasons for the more severe sentence would have to fulfill the requirements of PC Rule 1, § 10. However, for the reasons set forth below, we find that Ault's current sentence is not a more severe penalty than his original sentence.

Ault cites *McBroom v. State*, 530 N.E.2d 725, 727 (Ind.1988) for the notion that a sentence can be a "more severe penalty" even though it is not longer than the original sentence. In *McBroom*, a petitioner was granted post-conviction relief from a thirty-year sentence for murder. He then was charged with both murder and confinement, and after a trial by jury, was convicted of both. *Id.* He was sentenced to concurrent terms for the two convictions. *Id.* Our supreme court found that the additional twenty-year sentence for his conviction for criminal confinement was a more severe penalty within the meaning of PC Rule 1, § 10, even though he was not sentenced to more years in prison. However, the court explicitly viewed the case "in the double jeopardy context" and held that, in this context, PC Rule 1, § 10 prohibits the State from adding a charge after a post-conviction proceeding. *Id.* at 727.

In the instant case, no additional charge was involved, but rather a lesser charge. Moreover, Ault was sentenced to a term of fewer years. The sentence is thus not a more severe penalty, and PC Rule 1, § 10 does not apply. The trial court was therefore not required to give reasons for the sentence related to the defendant's conduct occurring after the original date of sentencing. Instead, we apply the abuse of discretion standard and affirm the trial court's finding that the aggravating factors outweighed the mitigating factors in the context of a conviction for a lesser offense. *See Tumulty v. State*, 666 N.E.2d 394, 396 (Ind. 1996) (trial court's balancing of aggravating and mitigating factors reviewed under abuse of discretion standard).

Ault also maintains that the imposition of the restitution order together with his sentence constitutes a "more severe penalty." Appellant's brief at 17. For the same reasons outlined above, we are not inclined to second-guess the trial court's evaluation of the severity of the restitution order and sentence. The restitution statute provides that the court may order restitution "in addition to any sentence imposed." IND.CODE § 35–50–5–3. Moreover, Ault expressed a wish to pay restitution. R. at 143, 160. We find no rational way to measure whether a restitution order and an eight-year sentence is "more severe" than a ten-year sentence, and thus we again find that the trial court was

---

**3.** Post-conviction Rule 1, § 10 provides that:

If a prosecution is initiated against a petitioner who has successfully sought [post-conviction] relief and a conviction is subsequently obtained ... then the sentencing court shall not impose a more severe penalty than that originally imposed unless the court includes in the record of the sentencing hearing a statement of the court's reasons for selecting the sentence that it imposes which includes reliance upon identifiable conduct on the part of the petitioner that occurred after the imposition of the original sentence, and the court shall give credit for time served.

within its discretion. *See Tumulty*, 666 N.E.2d at 396.

## II. ORDER OF RESTITUTION

Ault next contends that the order of restitution was contrary to law. He argues that neither the State nor N.F.'s mother is a "victim" under the terms of the restitution statute and thus neither may be compensated. Secondly, he maintains that the order exceeded the amount of actual loss suffered by N.F., the actual victim before the time of sentencing.

■ We note initially our standard of review. An order of restitution is within the trial court's discretion and will be reversed only upon a finding of abuse of discretion. *Vanness v. State*, 605 N.E.2d 777, 783 (Ind. Ct.App.1992). Under an abuse of discretion standard, we will affirm the trial court's decision if there is any evidence supporting the decision. *Gleason v. Bush*, 689 N.E.2d 480, 484 (Ind.Ct.App.1997).

### A. Who Is the Victim?

■ Ault argues that the State is not the victim of his actions, as contemplated by I.C. § 35–50–5–3.[4] He also maintains that case law has only deemed the State a victim when it suffered loss as a "direct and immediate result of the defendant's actions." Appellant's brief at 12.[5] He argues, therefore, that restitution to the State cannot be ordered under the statute in the instant case.

■ We note that a trial court has the authority to order a defendant convicted of a felony to make restitution to the victims. I.C. § 35–50–5–3(a). Restitution is a means of impressing upon a criminal defendant the magnitude of the loss he has caused. *Kotsopoulos v. State*, 654 N.E.2d 44, 46 (Ind.Ct. App.1995). Moreover, I.C. § 35–50–5–3 has been interpreted to mean that a state entity can be considered a "victim." *Hendrickson v. State*, 690 N.E.2d 765, 768 (Ind.Ct.App. 1998) (United Drug Task Force was entitled to restitution from defendant who accepted its purchase money for drugs). Ault seeks to distinguish *Hendrickson*, arguing that there, the State suffered a "loss as a direct and immediate result of [a criminal act]," while in this case, the State suffers no such loss but is rather similar to "an insurance agency." Appellant's Reply Brief at 13. However, we fail to see a distinction favorable to Ault. In *Hendrickson*, the State elected to spend money to obtain criminal evidence and was still deemed entitled to repayment. In the instant case, the State had no choice in its expenditure, made in direct support of the victim of a crime. We see nothing in I.C. § 35–50–5–3 which precludes the State from being found a victim in the circumstances of this case. Rather, we find that restitution in this case advances Indiana's public policy of ensuring that victims of criminal acts are reimbursed. *See Hendrickson*, 690 N.E.2d at 768.

■ Ault next argues that the payment ordered to N.F.'s mother is improper because her losses were not "suffered by the victim as a direct result of the crime." Appellant's brief at 10. Ault attacks payments made to N.F.'s mother, maintaining that the statute does not contemplate loss incurred by someone other than the victim. He argues that the victim was "only a baby and suffered no loss of income." Appellant's brief at 9–10.

---

4. I.C. § 35–50–5–3(a) provides in pertinent part: [I]n addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime, the victim's estate, or the family of a victim who is deceased. The court shall base its restitution order upon a consideration of: (1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair . . .; (2) medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime;

(3) earnings lost by the victim (before the date of sentencing) as a result of the crime including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime; . . .

5. The case that Ault cites, however, is concerned not with whether the State is a victim, but whether survivors of a murder victim can be considered victims if they have shown "loss as a direct and immediate result of the criminal acts of a defendant." *Roach v. State*, 695 N.E.2d 934, 943 (Ind.1998).

In addition, he questions the other expenses cited by N.F.'s mother: the cost of a van to transport N.F., the van's maintenance, and monthly expenses of $200 related to his care. Appellant's brief at 10.

I.C. § 35–50–5–3 does not define "victim." Moreover, it does not specifically contemplate income lost by the victim's parent as a result of the defendant's crime. However, the statute does contemplate "medical costs incurred by the victim." I.C. § 35–50–5–3(a)(2). Furthermore, the statute does not require that the victim, in this case a tiny infant, directly receive the payment covering the cost of his care.

In the instant case, N.F.'s mother's professional care of her child for the past three years represents part of the medical costs incurred by N.F. as a direct result of his injuries.[6] Likewise, the expenses cited by N.F.'s mother are part of the necessary costs of caring for N.F. Had payment been made to a legal representative of the victim, N.F., that representative would have paid them in part to N.F.'s mother. We conclude that the trial court did not abuse its discretion in ordering payment to the state and that payment to N.F.'s mother was a proper, although indirect, payment to N.F., the victim of the crime.

### B. Did Order Exceed Amount of Loss?

Ault next argues that the restitution order was improper because it considered future medical costs, and I.C. § 35–50–5–3 permits restitution only for medical expenses incurred before the date of sentencing. Specifically, he maintains that the amount ordered paid to the State and N.F.'s mother, and the amount to be paid to N.F.'s mother alone, are both unsupported by the evidence, which

does not show sufficient actual expenses before the date of sentencing.

I.C. § 35–50–5–3 provides in pertinent part that a restitution order shall be based upon a consideration of: "(2) medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime. . . ." Case law interprets the statute to mean that only actual costs incurred by the victim before the date of sentencing may be considered. *Kotsopoulos*, 654 N.E.2d at 46.[7]

In the instant case, contrary to Ault's assertion, the restitution order is based upon expenses already incurred at the time of sentencing and not on future expenses. We first address the order to pay $350,000 jointly to N.F.'s mother and to the State. The record shows that thirty-six months and twenty-five days elapsed from the time of N.F.'s injuries and Ault's sentencing. Record at 10, 22. N.F.'s "baseline medical expenses," when he is not hospitalized, have amounted to $7,400 per month, for a total of $266,400.[8] R. at 134. In addition, his monthly expense for medications is $1,400, for a total of $50,400. R. at 134. These expenses augment during N.F.'s frequent hospitalizations, rising to approximately $800 per day. R. at 134. His first hospital stay following his injury was one month long and included twelve days in intensive care. R. at 79. As a result, the cost amounted to at least $24,000, not including the additional expense associated with a stay in the intensive care unit. Furthermore, N.F. has been hospitalized more than forty times. R. at 79. N.F.'s special equipment, including a specially made car seat, costs a total of $7,800. R. at 134. N.F. has also had nine surgeries. R. at 79. The record reveals that N.F.'s medical expenses will continue throughout his life, but that they have al-

---

6. N.F.'s mother is a respiratory therapist.

7. We note, however, that the statute does not preclude either the State or N.F., by next friend, from bringing a civil action for medical expenses incurred after the date of Ault's sentencing, or any other expenses not covered by the restitution order. I.C. § 35–50–5–3(e) provides that:

> An order of restitution . . . does not bar a civil action for:
> (1) damages that the court did not require the person to pay to the victim under the restitution order but arise from an injury or property

damage that is the basis of restitution ordered by the court; and
(2) other damages suffered by the victim.

8. For the sake of mathematical simplicity, we do not count the twenty-five days between N.F.'s injury and Ault's sentencing but note that nearly one additional month of baseline expenses is thus not included in our above calculations. All calculations are based on multiplying monthly expenses by 36 months.

ready cost over $350,000, the bulk of it borne by the State. R. at 79. Thus, we do not find an abuse of discretion in the amount awarded jointly to N.F.'s mother and to the State.

■ The order to pay $100,000 to N.F.'s mother is likewise a payment for expenses incurred for N.F.'s care before the date of sentencing. In her testimony, N.F.'s mother compares her experience to that of families who lack medical training and whose children have impairments such as N.F.'s. N.F.'s mother testified that these families must have medical care for their impaired children even when the parents are at home because the families are not equipped to handle the frequent emergency situations that their children encounter. R. at 135. Moreover, the cost of the van which is required to transport N.F., the van's maintenance, and the $200 per month in additional expenses for N.F. have all been paid by N.F.'s mother in providing for his necessary care. Thus, in ordering restitution to N.F.'s mother, the court is again concerned with compensating the victim for expenses which were incurred as a direct result of Ault's crime. The ordered restitution represents payment to N.F.'s mother for the professional care she rendered and reimbursement for other expenses incurred in caring for her son at home.[9] We thus find the court was within its discretion in ordering restitution to N.F.'s mother.

In conclusion, there is ample evidence in the record to support the trial court's judgment. We find that the trial court did not impose a more severe penalty for this conviction subsequent to post-conviction relief, thus we conclude that the court did not abuse its discretion in sentencing Ault. Furthermore, we find that the trial court did not abuse its discretion either in ordering the amounts specified in the restitution order or in designating payment to the State and to the victim's mother.

Judgment affirmed.

GARRARD, J., and ROBB, J., concur.

9. We note that, in caring for N.F. at home, N.F.'s mother prevented the State from bearing the even greater cost of nursing care in an institution.