Rita V. LANG, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 67A01–0905–CR–241.

Court of Appeals of Indiana.

Aug. 17, 2009.

James R. Recker, Greencastle, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Rita V. Lang (Lang), appeals the trial court's order of restitution.

We affirm in part, reverse in part, and remand with instructions.

### ISSUES

Lang raises one issue on appeal, which we restate as: Whether the trial court abused its discretion when it ordered her to pay restitution.

The State raises one issue in rebuttal, which we restate as: Whether Lang filed her notice of appeal in a timely manner.

### FACTS AND PROCEDURAL HISTORY

Lang was the "Clerk Treasurer" for the Van Bibber Lake Conservancy District (Conservancy District) in Putnam County, Indiana. (Transcript p. 5). She ran the finances for the Conservancy District and was authorized to write checks on its behalf. It came to the attention of the Chairman of the Conservancy District's Board, Jerry Thacker (Thacker), that Lang had received multiple pay checks on the same date and deposited them into her personal banking account.

Thacker contacted the Indiana State Board of Accounts, who sent two field officers. The field officers suspected

something was awry with the finances of the Conservancy District, but refused to look into the matter further because of an absence of a substantial amount of financial records, and the disarray of the records that were present. The field officers suggested that the Conservancy District hire a private accounting firm to organize the financial records so they could return and conduct an investigation. A private firm was hired and organized the records that existed and officers from the State Board of Accounts eventually performed an examination of the financial records. The auditors determined that Lang had overpaid herself by a net amount of $12,699.24. In addition, the examination determined that $9,159.00 was missing from collections for trash bag sales.[1] Lang admitted to the auditors that she had taken the cash payments made for trash bags over a period of time. The Conservancy District paid the State Board of Accounts $8,400 for the examination.

On January 4, 2008, the State filed an Information charging Lang with theft, as a Class D felony, Ind.Code § 35–43–4–2(a). On December 8, 2008, Lang and the State entered into a plea agreement wherein Lang pled guilty as charged in exchange for a cap on her executed sentence of one year and restitution to be determined. Also in exchange for Lang's guilty plea, the State agreed to dismiss a separate Cause that was pending in Putnam Superior Court, except that Lang agreed to pay $70 in restitution related to that Cause to the Moose Lodge.

On January 5, 2009, the trial court conducted a sentencing hearing. After taking evidence, the trial court ordered Lang to pay restitution for the following items in the following amounts:

1. The Conservancy District sold special trash bags to the area residents and visitors, and the costs of trash collection and disposal was incorporated into the price of the trash bags.

| | |
|---|---|
| Salary overpayment in the amount of: | $12,699.24 |
| Missing Trash Bag Collections: | $ 9,159.00 |
| One half (1/2) of Examination fees: | $ 4,200.00 |
| TOTAL: | $26,058.24 |

\* \* \*

| | |
|---|---|
| Insufficient funds: | $ 70.00 |
| TOTAL: | $ 70.00 |
| GRAND TOTAL DUE and OWING | $26,128.24 |

(Appellant's App. p. 35). On January 9, 2009, the trial court reduced its order to writing and sent it to the parties, which was file stamped and entered as reflected by the Chronological Case Summary on January 12, 2009. On February 9, 2009, Lang filed her notice of appeal. The State filed a motion to strike the notice of appeal contending it was not filed in a timely manner. The trial court denied the State's motion.

Lang now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Timeliness of Appeal

We begin by addressing the State's contention that Lang's appeal is untimely, and, therefore, we do not have jurisdiction to consider the merits of this appeal. "A party initiates an appeal by filing a Notice of Appeal with the trial court clerk within thirty (30) days after the entry of a Final Judgment." Ind. Appellate Rule 9(A)(1). "Unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited except as provided by P.C. R. 2." App. R. 9(A)(5).

The State contends that the relevant date for timeliness is January 5, because the trial court orally rendered its sentencing order and order of restitution on that date.[2] When responding to the motion to strike filed before the trial court, Lang contended that January 12 was the relevant date for consideration of timeliness because that was the date when the trial court's written order was file stamped and entered as reflected in the Chronological Case Summary. In the alternative, Lang contended that the relevant date was January 9, 2009, the date on which the trial court reduced its order to writing and signed it. Lang explained that if her time to file a notice of appeal began on January 9, 2009, the due date would have been February 8, 2009, a Sunday, and, therefore, her notice of appeal would have been due on Monday, February 9, 2009.

In *Smith v. Deem*, 834 N.E.2d 1100 (Ind.Ct.App.2005), *trans. denied*, we reviewed case law regarding the date upon which the thirty day time limit to appeal began if there was a discrepancy between the date when the trial court rendered its order and when it was entered into the "record of judgments and order (RJO)" pursuant to Indiana Trial Rule 58. We explained that a "notice-based approach . . . is the best solution." *Id.* at 1109.

In cases where, for whatever reason, there is a delay between the trial court's rendition of judgment and the entry into the RJO, as is the case here, several things can be said. First the judgment or order is effective as between the parties from the date it is rendered. In addition, the date of entry into the RJO is generally the date from which the appellate time limit begins to run. Indeed, upon entry, the parties are required to be given notice. But where, as here, a party does have notice of the trial court's ruling before its entry into the RJO, we see no reason to justify allowing that party to delay filing a No-

---

**2.** Lang did not preemptively address this issue in her Appellant's Brief, and did not respond by way of Reply Brief.

tice of Appeal within thirty days of the date on which the party received notice simply because the clerk has not performed a ministerial task.

*Id.* at 1110.

We conclude that the rendition of the trial court's Final Judgment occurred on January 9, 2009, when the trial court signed the sentencing and restitution orders, not when the trial court explained orally what its intentions were at the close of the sentencing hearing. Therefore, regardless of whether we interpret the January 5th oral statement by the trial court as notice, Lang had thirty days from January 9 to file her notice of appeal. As such, Lang had at least until Monday, February 9, 2009, to timely file her notice of appeal, which she did.

## II. *Restitution Order*

Lang contends that the trial court erred by ordering her to pay $26,128.24 in restitution. She makes three distinct arguments: (1) that the amount of $9,159 missing trash bag collections is not supported by sufficient evidence; (2) that the trial court abused its discretion by ordering her to pay part of the examination fee, which is not a permissible basis for restitution; and (3) that the amount of restitution that she was ordered to pay should have been reduced by the insurance received by the Conservancy District.

■ A State entity may be considered a victim for purposes of restitution. *Ault v. State,* 705 N.E.2d 1078 (Ind.Ct.App. 1999). "Restitution is a means of impressing upon a criminal defendant the magnitude of the loss he has caused." *Kotsopoulos v. State,* 654 N.E.2d 44, 46 (Ind.Ct. App.1995). Relevant to the trial court's restitution order, Indiana Code section 35–50–5–3 lays out the requirements for a restitution order, by providing:

(a) Except as provided in subsection (i) or (j), in addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime.... The court shall base its restitution upon a consideration of:

> (1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate);

> \* \* \*

> (4) earnings lost by the victim (before the date of sentencing) as a result of the crime including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime.

"Generally, an order of restitution is within the trial court's discretion, and it will be reversed only upon a finding of an abuse of that discretion. An abuse of discretion occurs when the trial court misinterprets or misapplies the law." *Green v. State,* 811 N.E.2d 874, 877 (Ind.Ct.App.2004). However, to the extent that the determination of this issue rests upon statutory interpretation, our review is *de novo. See Ashley v. State,* 757 N.E.2d 1037, 1039 (Ind.Ct.App.2001).

### A. *Trash Bag Collections*

■ Lang contends that the missing trash bag fund "amounts assessed are only a guess." (Appellant's Br. p. 3). Her contention has some support, as the State Board of Accounts audit acknowledged that there were no "beginning and ending inventories." (Tr. p. 47). The auditors offset the amount of calculated sales and actual deposits for the years 2005 and 2006 to arrive at the determination that $9,159

was missing. Moreover, we must acknowledge that the reason that a more exact way of calculating the amount of missing money is not possible is because Lang did not keep accurate records to facilitate her stealing. For this reason, we conclude that the trial court did not abuse its discretion by concluding that Lang should pay $9,159 for missing trash bag collections.

### B. *Assessment of Examination Fees*

■ Next, Lang contends that the trial court abused its discretion by ordering restitution based on expenses incurred by the Conservation District when investigating its financial records. As we stated above, Indiana Code section 35–50–5–3 governs orders for restitution, and if any of the enumerated considerations were to apply to the trial court's award of investigation fees it would be property damages or earnings lost. However, we conclude that neither apply.

In *Henderson v. State*, 848 N.E.2d 341 (Ind.Ct.App.2006), we considered Henderson's challenge to a restitution award to Allstate Insurance for expenses which it incurred investigating a fire which she set. We acknowledged that Allstate sought restitution of money which it had *expended*, not money that it had *lost*. *Id.* at 346. For that reason, we concluded that Allstate's expenditures was not an appropriate basis for a criminal restitution award, although it would give rise to a civil claim that Allstate could pursue. *Id.*

We conclude that the same rationale applies here. The examination fee from the State Board of Accounts was an expenditure paid by the Conservancy District to investigate its finances and the questionable acts by Lang. This expenditure may give rise to a civil claim by the Conservancy District against Lang, but it is not an appropriate claim for criminal restitution. Therefore, we must reduce the trial court's

restitution order by the amount attributable to the examination fee: $4,200.

### C. *Insurance Bond*

■ Finally, Lang contends that the order of restitution should be reduced by the amount of the insurance bond which has been paid to the Conservancy District. Specifically, Lang contends that the order of restitution provides the Conservancy District with a double recovery because the Conservancy District received partial compensation for Lang's financial misdoings from the insurance bond.

In *Little v. State*, 839 N.E.2d 807, 810 (Ind.Ct.App.2005), we acknowledged that the amount of restitution must reflect only the actual costs incurred by the victim. Applying that principle to the circumstances in *Little*, we concluded that the trial court's order of restitution provided for duplicate recovery by ordering restitution to the victim for some expenses that had been covered by insurance, and, therefore, was an abuse of discretion. *Id.* We remanded to the trial court with instructions that it fix the restitution order, but noted that the court could avoid a duplicate recovery restitution order by ordering certain amounts payable to the insurance company, as opposed to the person who had been injured by the defendant's acts. *Id.* at 810 n. 10.

Applying *Little* to the circumstance before us, we conclude that we need not remand because Lang has not demonstrated that there has been a double recovery. We first note that our task at determining exactly why the insurance bond was paid to the Conservancy District is hindered because none of the paper work relevant to insurance proceeds was entered into the record: no policy, no claim, and no statement regarding disbursement. From the record before us, we know only that Thacker believed the policy covered "the financial misdoings of our employees."

(Tr. p. 34). When asked if that meant "theft or negligence?" he responded: "That was covered yes." (Tr. p. 34). He went on to explain that in addition to the losses from Lang's thievery, the Conservancy District incurred substantial costs due to Lang's negligence. Thacker explained:

Well just in December we got a ninety thousand dollar bill we didn't know about. The one that William was telling you they wanted the money right now. That's because she didn't pay the three thousand a month for four years ... for a reserve loan which New York Bank required which I did not know.

(Tr. p. 35). Thacker estimated that the losses due to Lang's financial misdoings "could easily be two hundred fifty thousand." (Tr. p. 35).

A member of the Board of Directors for the Conservancy District, Robert Vandergriff, explained that Lang had allowed the collections for sewer bills get $85,000 in arrears. "She just let people go and not pay their sewer bills. Told them they didn't have to pay. Just pay their water bill and let the sewer go." (Tr. p. 31). Another member of the Board of Directors, William Dixon estimated the losses due to Lang's thievery and negligence as being "probably between well in excess of a hundred fifty thousand, hundred eighty thousand in damages [and] penalties from the government." (Tr. p. 26).

Because the losses suffered by the Conservancy District were far in excess of the restitution award, we conclude that Lang has failed to demonstrate that the restitution award constituted a double recovery in light of the insurance proceeds.

### CONCLUSION

Based on the foregoing, we conclude that the restitution order is supported by sufficient evidence, does not constitute a double recovery, but that the $4,200 attributable to the examination fee is not supported by a permissible basis for a restitution award. Therefore, we remand for the trial court to reduce the order of restitution by $4,200.

Affirmed in part, reversed in part, and remanded with instructions.

BAKER, C.J., and FRIEDLANDER, J., concur.