

**ATTORNEY FOR APPELLANT**

Cara Schaefer Weineke
Weineke Law Office, LLC
Plainfield, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Julie Bickford,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 13, 2015

Court of Appeals Cause No.
62A01-1409-CR-389

Appeal from the Perry County
Circuit Court
The Honorable Lucy Goffinet
Cause No. 62C01-1210-CM-660

**Bailey, Judge.**

# Case Summary

[1] Julie Bickford ("Bickford") pled guilty to three counts of Cruelty to an Animal, as Class A misdemeanors.[1] As part of its sentencing order, the trial court required Bickford to pay restitution for costs associated with a rescue organization's care for the three horses Bickford had mistreated. She now appeals.

[2] We affirm.

# Issue

[3] Bickford presents a single issue for our review, which we restate as whether the trial court abused its discretion when it ordered her to pay restitution associated with the care of three horses she formerly owned.

# Facts and Procedural History

[4] Bickford lived in an unincorporated area of Perry County with her husband, children, and mother. The family owned a number of animals, including three horses acquired over the course of 2011 and 2012.

[5] On September 4, 2012, Perry County Sheriff's Deputy Daymion Marsh ("Deputy Marsh") observed the three horses while on patrol near Bickford's home. Based upon the condition of the horses, on September 5, 2012, Deputy

---

[1] Ind. Code § 35-46-3-7 (West 2013). Our Legislature has amended significant portions of Indiana's criminal statutes, effective July 1, 2014. We refer to the statutory provisions in effect at the time of Bickford's offense.

Marsh, together with Jodi Lovejoy ("Dr. Lovejoy"), a veterinarian from the State Board of Animal Health, and members of a local rescue organization, Horse Rescue South ("HRS"), went back to Bickford's home. Deputy Marsh informed Bickford that he had probable cause to believe that the horses were being neglected, and requested that Bickford permit Dr. Lovejoy and HRS to examine the horses.

[6] Bickford allowed the examination of the horses. Dr. Lovejoy concluded that the horses were severely malnourished, none of the horses had received proper care for their hooves, and one horse was ill. After Dr. Lovejoy's examination, she provided Bickford with information on proper care of the numerous animals on the property. At the conclusion of the visit, Bickford voluntarily transferred the three animals to HRS.

[7] The ill horse died in HRS's care within ten days of the transfer. A second, elderly horse died several months later, and the third horse was eventually adopted from HRS's care in December 2012. HRS incurred $691.82 in costs for its care of the animals.

[8] On October 8, 2012, Bickford was charged with four counts of Cruelty to an Animal. On February 20, 2014, the fourth count, which related to the care of several kittens, was dismissed.

[9] On April 1, 2014, Bickford pleaded guilty to the three remaining counts of Cruelty to an Animal—one count for each of the three horses. After a hearing on April 1, 2014, which was continued to April 29, 2014, the trial court entered

judgments of conviction and sentenced Bickford to three consecutive one-year terms of imprisonment, with all three sentences suspended to probation. The court imposed several conditions to Bickford's probation, and further ordered that Bickford pay restitution to HRS totaling $691.82 over eighteen months as reimbursement for HRS's costs in caring for the three horses.

This appeal ensued.

# Discussion and Decision

Bickford's appeal challenges the trial court's order of restitution to HRS for the costs it incurred while caring for the three horses that were removed from Bickford's property.

Bickford frames her question as a purely legal one: were the requirements of Indiana Code section 35-46-3-6 met, such that the trial court was authorized to order her to pay restitution to HRS? To the extent Bickford's appeal centers upon construction of the applicable statutes, we review such issues de novo. *See Vanderburgh Cnty. Election Bd. v. Vanderburgh Cnty. Democratic Cent. Comm.*, 833 N.E.2d 508, 512 (Ind. Ct. App. 2005).

## Animal Cruelty Statute

Bickford contends that the trial court's restitution order was beyond its statutory authority under Section 35-46-3-6. The statute provides, "[a]ny law enforcement officer or any other person having authority to impound animals who has probable cause to believe there has been a violation [of certain animal

cruelty laws] may take custody of the animal involved." I.C. § 35-46-3-6(b). The owner of an animal thus impounded may seek a separate hearing to determine whether probable cause exists. I.C. § 35-46-3-6(d). The owner of an animal impounded under the statute's authority "may prevent disposition of the animal by an animal shelter" by timely posting bond to provide for the animal's care, and may renew that bond under certain conditions. I.C. § 35-46-3-6(c). However, "[i]f the owner of an animal impounded under this section is convicted of an offense under this chapter or I.C. 15-20-1-4, the owner shall reimburse the animal shelter for the expense of the animal's care and keeping." *Id.*

[14] Upon sentencing Bickford, the trial court ordered her to pay restitution to HRS. That is, Bickford argues that the trial court ordered reimbursement of HRS as though HRS was in the position of an animal shelter. Bickford does not challenge HRS's status as a shelter. Rather, Bickford contends that her horses were not impounded within the meaning of Subsection 35-46-3-6(b) & (c), and thus, as a matter of law, the trial court could not properly order her to pay restitution to HRS. Specifically, Bickford notes that she voluntarily surrendered the horses to HRS, and that she did not seek to reclaim ownership of the animals at any point during the proceeding.

[15] In support of this position, Bickford directs us to her testimony and that of Jo Sodel ("Sodel"), the President of HRS who was present at Deputy Marsh's request on September 5, 2012. Sodel helped arrange care for the horses and presented paperwork to Bickford that Bickford signed at the conclusion of Dr.

Lovejoy's examination of the horses. Bickford never sought to challenge Deputy Marsh's contention that probable cause existed, and never posted bond to recover the horses, as allowed under the statute. Because she surrendered the animals and took no action indicative of any intent to retrieve them at the close of the proceedings in this case, then, Bickford argues that the animals were not impounded as contemplated by the Section 35-46-3-6.

[16] Under this specific set of facts, we agree with Bickford that the horses were not impounded within the contemplation of Section 35-46-3-6. Looking at the entirety of the statute in light of the plain and ordinary meanings given to the term "impound," we cannot conclude that the course of events here amounted to impoundment, because Bickford voluntarily relinquished possession and ownership of the horses. The horses were not seized with any possibility of return, a condition the impoundment statute contemplates.

## Restitution Statute

[17] Our analysis does not stop there, however. For while we conclude that the horses were not impounded under Section 35-46-3-6, we must also look to whether restitution to HRS was proper under the general restitution statute. The statute provides, in relevant part,

> in addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime, the victim's estate, or the family of a victim who is deceased. The court shall base its restitution order upon a consideration of:

(1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate);

(2) medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime;

(3) the cost of medical laboratory tests to determine if the crime has caused the victim to contract a disease or other medical condition;

(4) earnings lost by the victim (before the date of sentencing) as a result of the crime including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime; and

(5) funeral, burial, or cremation costs incurred by the family or estate of a homicide victim as a result of the crime.

Ind. Code Ann. § 35-50-5-3(a). We review restitution orders for an abuse of discretion. *Rich v. State*, 890 N.E.2d 44, 49 (Ind. Ct. App. 2008), *trans. denied*.

[18] An order of restitution may be ordered as part of a defendant's sentence "wholly apart from probation." *Edsall v. State*, 983 N.E.2d 200, 208 (Ind. Ct. App. 2013). "Restitution is a means of impressing upon a criminal defendant the magnitude of the loss he has caused." *Ault v. State*, 705 N.E.2d 1078, 1082 (Ind. Ct. App. 1999). Restitution also serves to "vindicate the rights of society." *Esdall*, 983 N.E.2d at 207.

[19] Arguing against the applicability of the general restitution statute, Bickford argues that HRS was not a victim as contemplated by the statute. A victim is someone "shown to have suffered injury, harm or loss as a direct and immediate result of the criminal acts of a defendant." *Reinbold v. State*, 555 N.E.2d 463, 471 (Ind. 1990), *overruled on other grounds by Wright v. State*, 658 N.E.2d 563 (Ind. 1995). Our courts have held that third parties—notably the State—may be entitled to restitution for criminal offenses that resulted in

monetary expenses for treatment of injuries. Thus, in *Ault*, this Court affirmed an order of restitution favoring the State, where the State incurred expenses associated with medical treatment for an infant who suffered severe injuries due to Ault's conduct, despite Ault's contention that the State was merely serving a role similar to that of "an insurance agency." 705 N.E.2d at 1082-83 (citations and quotations omitted).

[20] Here, HRS was contacted by Deputy Marsh to provide care for the horses, and HRS provided such care. There is no indication in the record that HRS would have refused to take care of the horses if Deputy Marsh had impounded them in lieu of Bickford's voluntary surrender of the animals. HRS would have not been in a position to assume care of the horses had Bickford provided that care herself—and Bickford cannot now claim, after a guilty plea, that she was not neglectful in her care for the horses.[2] Further, despite Bickford's argument to the contrary, just as the general restitution statute does not specify that only the parent of a minor child may receive compensation associated with the child's injuries, neither does the statute limit compensation to the owner of damaged property. *See id.*

[21] We accordingly find no abuse of discretion in the trial court's decision to order Bickford to pay restitution to HRS.

---

[2] Bickford argues there was some form of "as-is" transaction between her and HRS, but does not develop the argument. That argument is, accordingly, waived. *See* Ind. Appellate Rule 46(a)(8)(A).

Affirmed.

Robb, J., and Brown, J., concur.