## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Kay A. Beehler
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Antonio L. Ware,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | October 26, 2016<br><br>Court of Appeals Case No.<br>68A01-1604-CR-754<br><br>Appeal from the Randolph Circuit Court<br><br>The Honorable Jay L. Toney, Judge<br><br>Trial Court Cause No.<br>68C01-1410-F5-564 |

**Baker, Judge.**

[1] Antonio Ware appeals his conviction for Theft,[1] a Level 5 felony. Ware argues that the trial court erred by granting Ware's request to represent himself at his trial. Ware also contends that the trial court abused its discretion by ordering Ware to make restitution to his victim's insurer. Finding no error, we affirm.

## Facts

[2] During the relevant period of time, Ware was employed by D & H Logistics as a driver doing pick-up and delivery of certain packages. On October 13, 2014, a package belonging to a business called Silvertowne went missing. The package contained gold coins worth $69,245. Video security footage led law enforcement to suspect Ware of the theft, and on October 24, 2014, the State charged Ware with one count of Level 5 felony theft.

[3] Initially, Ware retained private attorneys, but on January 26, 2015, those attorneys withdrew. On January 27, 2015, Ware requested that a public defender be appointed to represent him, and the trial court granted the request, appointing Attorney Ronald Moore. On April 9, 2015, about two weeks before Ware's jury trial was scheduled to begin, Attorney Moore moved to withdraw. At the hearing on the motion, Ware complained that he did not like Attorney Moore's attitude, that counsel was being accusatory, and that Attorney Moore was disrespectful of Ware. The trial court granted the motion to withdraw.

---

[1] Ind. Code § 35-43-4-2(a)(2).

[4] The same day, April 9, 2015, the trial court appointed Attorney James Fry to represent Ware. Attorney Fry requested a continuance of the trial given that he was new to the case, which the trial court granted, resetting the trial for July 20, 2015. On June 24, 2015, Attorney Fry moved to withdraw, stating that there were "increasing personal and communication difficulties between Defendant and counsel" and that Ware had indicated he no longer wished to be represented by Fry. Appellant's App. Vol. II p. 73. At the hearing on Fry's motion, Fry and Ware initially stated that they had resolved their differences, but Ware later asked to have Attorney Fry replaced. Ware complained that Attorney Fry had only begun practicing law in 2013 and his inexperience was causing problems. Ware stated, "If the courts can't assign me another lawyer I will represent myself." *Id.* at 82. Attorney Fry stated that there was a conflict of interest between his duty to Ware and his duty to refrain from conduct that would be criminal or fraudulent, given the lines of argument that Ware was insisting his attorney pursue.

[5] The trial court did not rule on Attorney Fry's motion at that time. At another hearing on July 8, 2015, the trial court explained that it had not heard anything warranting Attorney Fry's removal. The trial court addressed Ware's statement that he would represent himself: "Now I will warn you that if you represent yourself you are held to the same standards as an attorney would be held with regard to objections, any presentation of evidence, and essentially any matters related to the trial itself." Tr. Vol. II p. 49. Ware replied that he understood. The trial court stated that if Ware wished to proceed pro se, Attorney Fry

would remain as stand-by counsel to offer advice and answer questions. Ware replied that he wanted to represent himself "so that you won't have to keep on assigning me lawyers, me not agreeing with them or keep on having lawyers withdraw." *Id.* at 49-50. Ware stated that he did not want Attorney Fry to be his stand-by counsel "because I really don't feel comfortable with Mr. Fry having anything to do with my case," and indicated he might seek to hire his own stand-by counsel. *Id.* at 53. Ware further stated, "I don't really feel comfortable representing myself, but I feel like I have no choice." *Id.* The trial court granted Ware's request to represent himself, appointed Attorney Fry as stand-by counsel, and confirmed the July 20, 2015, trial date.

[6] On July 8, 2015, Ware filed a pro se motion to continue the trial, alleging that the change to self-representation had deprived him of time to prepare. The trial court granted the motion, rescheduling the trial to September 21, 2015.

[7] Approximately one week later, Ware asked for Attorney Fry's appearance to be withdrawn altogether because Ware had lodged a disciplinary complaint against him. The trial court granted the request and removed Attorney Fry entirely from Ware's case.

[8] On July 28, 2015, Ware requested to have a new public defender appointed to represent him because "[i]f I represent myself in this case at trial I can not present my case with the same standards as a lawyer . . . ." Appellant's App. Vol. II p. 90. The trial court granted the motion and appointed Attorney Mark Cox to represent Ware. Attorney Cox moved to continue the trial date so that

he would have sufficient time to prepare. The trial court granted the motion and rescheduled the trial to January 11, 2016.

[9] On December 14, 2015, Ware filed a motion to remove Attorney Cox from his case, alleging that Cox was "too busy to prepare evidence" and that "I am better off preparing my own case." *Id.* at 104. Ware noted that he was willing to accept Attorney Cox as stand-by counsel. Ware also asked that the trial be continued again so that he would have time to prepare his own defense. Attorney Cox filed a motion to withdraw on the same day, alleging that Ware's communication was "overbearing with requests and demands" and that their relationship had deteriorated to a point that Cox was no longer able to function as counsel. *Id.* at 109. At the hearing on the motions, Attorney Cox stated that Ware had sent him over 100 emails and "it seems like every time I look at my phone I am getting something from Mr. Ware . . . ." Tr. Vol. II p. 70-71. The trial court denied the motions to remove Attorney Cox but reset the jury trial to February 29, 2016.

[10] On February 2, 2016, Attorney Cox again moved to withdraw from Ware's case, stating that his relationship with Ware had not improved and that Ware continued to ask that Cox withdraw. At the hearing on the motion to withdraw, Attorney Cox told the trial court that Ware insisted that he wished to represent himself. The trial court then addressed Ware as follows:

> Mr. Ware you do have, as Mr. Cox stated, the constitutional right to represent yourself. However, if you are representing yourself in Court you will be held to the same standards as an

attorney.  In other words if there are objections for example, that need to be made at trial the Court can not make those for you. The Court can not advise you as to what objections or other actions to take during a trial.  You will be responsible for calling witnesses, questioning any witnesses, cross examining witnesses . . . [b]y the State just to give you a few examples of what your obligations would be in representing yourself.

Tr. Vol. II p. 81.  The trial court asked if Ware still wanted to proceed pro se, and Ware responded that he did.  The trial court granted the motion and designated Attorney Cox as Ware's stand-by counsel, emphasizing again to Ware that he would be held to a high standard:

> Again you are going to be held to the same standards that an attorney who regularly practices law would be held to. . . .  Now I have talked with you here this morning Mr. Ware about what goes on during the trial, but obviously if you are representing yourself then you have the same obligations as an attorney would to prepare for the trial.  Do you understand that?

*Id.* at 82.  Ware responded affirmatively.  Ware asked for another continuance so that he could have more time to prepare.  The trial court denied the motion.

[11]  On February 8, 2016, Ware filed a motion alleging that he was incompetent to stand trial, and on February 9, 2016, Ware filed a notice of his intent to raise a defense of mental disease or defect.  The trial court denied both motions.  On February 10, 2016, Ware filed a motion asking that an attorney be appointed to represent him, claiming that mental illness had caused him to discharge his previous attorneys.  At the hearing on the motion, Ware explained that he did not believe he would be able to present his case well to the jury.  The trial court

agreed, reminding Ware that he had told him more than once that it is very difficult to proceed pro se: "[t]he Court tried to provide you with the best representation possible through the attorneys that were appointed and that simply didn't work out. You didn't seem to be able to get along with any of them." Tr. Vol. II p. 108-10. Subsequently, the following discussion occurred:

> COURT: . . . Mr. Ware what is it you want me to do? I have done everything that you have asked since this case started. I have appointed you three different attorneys and you could not get along with any of them.
>
> ***
>
> WARE: I can't represent myself.
>
> COURT: Are you asking for Mr. Cox to be put back on your case?
>
> WARE: If he's the only choice that I have, yes . . . .
>
> COURT: Well there is no way any other attorney could prepare for the case that would not be possible.
>
> WARE: Well he would have to do. I would just have to roll the dice with him . . . . But yeah I would like Mr. Cox. I would have to speak with him and we have to come to an understanding, I guess, cause I can't go representing myself.
>
> ***

COURT: Alright. The idea Mr. Ware is to give you the best representation possible. I agree with you having Mr. Cox on your case as an attorney with trial experience puts you in a better position than if you do not have an attorney. . . .

*\*\**

COURT: Alright. Well although I think it is somewhat unfair to Mr. Cox what this is really about is what I can do to be most fair to you. Based upon your request . . .

*\*\**

COURT: . . . Well again its [sic] not something I am sure Mr. Cox is going to be in favor of, but I am going to have court staff advise him that he is to act as your counsel in this case just as though he had not been placed to be merely stand-by counsel and he will be advised of that as soon as we can reach him. . . .

*Id.* at 111-14. The trial court then told Ware to wait while the court tried to locate Attorney Cox, who was likely elsewhere in the building in a different courtroom. Subsequently, the trial court went back on the record, noting that while court staff was speaking with Attorney Cox on the phone, Ware had approached the trial court and stated that he had changed his mind again and wanted to represent himself:

COURT: In fact the Court Reporter was on the phone with Mr. Cox and I got word Mr. Ware that you do wish to represent yourself correct?

WARE:       [Inaudible]

COURT:      Alright.  That will be the ruling of the Court.  Its
            [sic] thirteen days before trial.  There will not be any
            reversal of that.  You have made your decision on
            two different days to represent yourself.  That will
            be the ruling of the Court.  Your request to
            represent yourself will be granted.  Mr. Cox will still
            be required to be here [as] stand-by counsel.

*Id.* at 120.

[12]    Ware's jury trial began on February 29, 2016.  At the close of the trial, the jury found him guilty as charged.  Ware's sentencing hearing took place on March 28, 2016.  The trial court sentenced him to four years, with two years suspended to probation.  At the sentencing hearing, evidence was presented establishing that the value of the coins Ware had stolen totaled $69,245; an insurance company had paid Silvertowne $68,245 to cover the loss; and a carrier had paid the policy's $1,000 deductible directly to Silvertowne.  The trial court entered a restitution order requiring Ware to pay $68,245 to the insurance company.  Ware now appeals.

## Discussion and Decision

## I.  Proceeding Pro Se

[13]    First, Ware contends that the trial court committed fundamental error by permitting him to represent himself at and before trial.  Our Supreme Court has

explained the contours of a defendant's rights to be represented by counsel and to represent himself as follows:

> The Sixth Amendment, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to counsel before he may be tried, convicted, and punished. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). This protection also encompasses an affirmative right for a defendant to represent himself in a criminal case. *Id.* However, "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id.* at 834, 95 S.Ct. 2525. Because the defendant who waives his right to counsel and proceeds to trial unrepresented is forgoing "many of the traditional benefits associated with the right to counsel . . . the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.* "[H]e should be made aware of the dangers and disadvantages of self-representation, so that that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835, 95 S.Ct. 2525 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

> There is no particular formula or script that must be read to the defendant. The information that must be given "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Iowa v. Tovar,* 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004).

*Hopper v. State*, 957 N.E.2d 613, 617-18 (Ind. 2011). To determine whether a waiver of counsel was made voluntarily and intelligently, courts must consider four factors: (1) the extent of the trial court's inquiry into the defendant's

decision; (2) other evidence in the record establishing whether the defendant understood the dangers and disadvantages of self-representation; (3) the background and experience of the defendant; and (4) the context of the defendant's decision to proceed without an attorney. *Id.* at 618.

[14] Initially, Ware claims that he did not demand to exercise his right to self-representation pursuant to the above authority. Reply Br. p. 5. Instead, he contends that he acted as his own attorney because he had no other choice. The record belies this contention. The trial court, acting with significant patience and understanding, afforded Ware the opportunity to be represented by *three* different public defenders, repeatedly delaying his jury trial as a result. The trial court did not deny Ware the right to representation; it bent over backwards to try to help him find an attorney with whom he could work. That Ware was unable or unwilling to accept the services of three different court-appointed attorneys does not mean that he had no choice but to represent himself. Therefore, we will analyze this case under the rubric established for defendants who demand the right to represent themselves at trial, as that is precisely what Ware did in this case.[2]

[15] First, we consider the extent of the trial court's inquiry into Ware's decision to represent himself. The trial court engaged in conversation with Ware about this

---

[2] Although Ware purports to make an argument under the Indiana Constitution as well as the United States Constitution, he provides no separate authority, argument, or analysis under the Indiana Constitution. Consequently, we decline to address his argument with respect to our state Constitution.

issue in no less than five hearings over the course of nearly one year. Each occasion featured significant, lengthy conversations with Ware about the reasons for his decision as well as the challenges and disadvantages of self-representation. Indeed, the trial court repeatedly and forcefully counseled Ware that proceeding pro se would be extremely difficult. But Ware was not persuaded. In each conversation, he expressed dissatisfaction with his attorney at the time based on, in the State's words, his "desire for what he thought was a perfect attorney who showed proper deference; attended to and answered every communication and demand; prepared the case Ware wanted; and would obey Ware's instructions even if they meant presenting irrelevant matters or engaging in criminal or fraudulent conduct." Appellee's Br. p. 23. In the end, we find that the trial court conducted a sufficient inquiry into Ware's decision to proceed pro se.

[16] Second, as to whether Ware understood the dangers and disadvantages of self-representation, we again note that the trial court repeatedly, over the course of multiple hearings and nearly one year, cautioned Ware that proceeding pro se was not a wise course of action. Indeed, after Ware had been representing himself for some time during the pretrial proceedings, Ware returned to the trial court and asked for an attorney, explaining that he understood he would not be able to present his case to a jury as well as an attorney would. The trial court agreed, but while court staff was on the phone with Attorney Cox explaining that he had been re-appointed to Ware's case, Ware changed his mind yet again and stated that he wanted to proceed pro se after all. So Ware was well aware

of the disadvantages of representing himself but chose to proceed without counsel anyway.

[17] Third, as to Ware's background and experience, the record reveals he was thirty-three years old, had graduated from high school and attended college, and had earned a Paralegal Associates Degree in 2008. He was the subject of criminal prosecutions for theft in 2001; felony assault with a deadly weapon in 2002; weapons possession and possession of criminal tools in 2005; possession of marijuana in 2006; disorderly conduct in 2007; and strangulation, domestic battery, and battery resulting in bodily injury in 2010. He had discussed the instant case with three experienced attorneys. We find that this record does not suggest that Ware was unfamiliar with legal proceedings or that he lacked the education and experience to understand his options and the effect of his decisions.

[18] Finally, as to the context of Ware's decision to represent himself, we note again that he had three different court-appointed public defenders at different points in his case. He was unable or unwilling to get along with any of them, refusing to listen to their advice that much of what he wished to argue at trial was irrelevant and confusing. The trial court did not give Ware an ultimatum; it did not unilaterally decree that he had waived his right to counsel by expressing displeasure with appointed counsel. Indeed, the trial court agreed to re-appoint Attorney Cox on the eve of trial, and was on the phone with counsel to inform him of the change in circumstances, when Ware changed his mind yet again and insisted he wished to proceed pro se. It is apparent that Ware carefully

considered, and reconsidered, his option to represent himself; that he was aware of the challenges of self-representation; and that he ultimately decided that only he could present the case as he wished. Under these circumstances, we find that Ware's waiver of counsel was knowing and intelligent. We decline to reverse on this basis.

## II. Restitution Order

[19] Next, Ware contends that the trial court erred in ordering him to pay restitution to Silvertowne's insurer. A trial court may order restitution to a victim as part of a defendant's probation or sentence. *Edsall v. State*, 983 N.E.2d 200, 208 (Ind. Ct. App. 2013). The "victim" is one who has "suffered injury, harm or loss as a direct and immediate result of the criminal acts of a defendant." *Sickels v. State*, 982 N.E.2d 1010, 1013 (Ind. 2013); *see also Lang v. State*, 911 N.E.2d 131, 136 (Ind. Ct. App. 2009) (noting that "victim" includes insurers who have paid money to insureds as a result of harm or injury caused by a crime). We will reverse the restitution order only if no evidence or reasonable inferences support the decision or if the trial court has misinterpreted or misapplied the law. *Edsall*, 983 N.E.2d at 208.

[20] At the sentencing hearing, the trial court was provided with an affidavit from Silvertowne's Vice President and General Manager. The affidavit stated that the value of the stolen coins was $69,245, that the amount had been covered in full by Silvertowne's insurer, and that a $1,000 deductible had been paid by a carrier. Appellant's App. Vol. IV p. 12. Ware did not object to this affidavit or

dispute its contents. The trial court entered an order requiring Ware to pay restitution in the amount of $68,245 to Silvertowne's insurer. Ware directs our attention to other evidence in the record that he claims undercuts the trial court's order, but this amounts to a request that we reweigh evidence—a request we decline. The affidavit constitutes sufficient evidence to support the trial court's restitution order, and we find no error on this basis.

[21] The judgment of the trial court is affirmed.

Vaidik, C.J., and Najam, J., concur.