**Vernon HENDRICKSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 67A01–9703–CR–87.

Court of Appeals of Indiana.

Jan. 30, 1998.

Susan K. Carpenter, Public Defender, Gregory L. Lewis, Deputy Public Defender, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BAKER, Judge.

Today, we are asked to determine whether it is manifestly unreasonable to impose maximum and consecutive sentences for simultaneous drug convictions stemming from a series of controlled buys during a sting operation, merely because the convictions involved different types of drugs. Appellant-defendant Vernon Hendrickson appeals his convictions and sentences for Dealing in Marijuana,[1] a Class D Felony, two counts of the Unlawful Sale of a Legend Drug,[2] both Class D Felonies, and two counts of Dealing in Methadone,[3] both Class B Felonies. In addition to his contention that the trial court erred by imposing consecutive sentences, Hendrickson argues that the trial court improperly ordered him to pay restitution to the United Drug Task Force (UDTF) and improperly instructed the jury on the definition of reasonable doubt.

### FACTS

In August of 1995, officers from the UDTF division of the Putnam County Sheriff's Department arranged for a confidential informant to make a series of drug buys from Hendrickson. Thereafter, on August 25, 1995, the informant went to Hendrickson's residence and purchased marijuana from him. The following day, the informant returned to Hendrickson's residence and bought thirty tablets of a legend drug known as "Soma" from him. Then, on September 25, 1995, the informant purchased eighty-eight pills of a legend drug known as Trivil from Hendrickson. Finally, on October 16, 1995, and again on October 22, 1995, the informant bought Methadone from Hendrickson. Each of the buys was recorded by officers from the UDTF.

On February 20, 1996, Hendrickson was charged with dealing in marijuana, a class D felony, two counts of the unlawful sale of a legend drug, both class D felonies and two counts of dealing in methadone, both class B felonies.[4] During Hendrickson's trial, in Au-

---

1. IND.CODE § 35–48–4–10(b).

2. IND.CODE §§ 16–42–19–11, 16–42–19–27.

3. IND.CODE § 35–48–4–2(a).

4. Hendrickson was also charged with seven other drug-related offenses which were dismissed before sentencing.

gust of 1996, the court read the jury preliminary instructions, including the Federal Judicial Center's pattern jury instruction defining reasonable doubt, without objection from Hendrickson. At the conclusion of the evidence, the trial court read the jury the final instructions, including the Federal Judicial Center's pattern jury instruction on reasonable doubt, which was given over Hendrickson's objection. Following the jury's deliberations, Hendrickson was convicted as set forth above.

A sentencing hearing was held on September 4, 1996, during which the trial court noted Hendrickson's extensive criminal history as an aggravating circumstance. As a result, the court sentenced Hendrickson to the maximum term of twenty years imprisonment for each count of dealing in methadone, to be served concurrent with each other, the maximum term of three years imprisonment for each count of the unlawful sale of a legend drug, to be served concurrent with each other, and the maximum term of three years imprisonment for dealing in marijuana. In addition, the sentences for dealing in methadone, selling a legend drug and dealing in marijuana were to be served consecutively, for a total of twenty-six years imprisonment. The trial court also ordered Hendrickson to pay fines on each of the counts and to reimburse the UDTF for money that he received from the drug transactions. Hendrickson now appeals.

## DISCUSSION AND DECISION

### I. Consecutive Sentences

First, Hendrickson contends that his twenty-six year sentence was manifestly unreasonable. Specifically, he contends that the court erred by both sentencing him to the maximum term on each count and by ordering three of those terms to be served consecutively.

In support of his contention, Hendrickson relies on our supreme court's holding in *Beno v. State*, 581 N.E.2d 922, 924 (Ind.1991). In *Beno*, the police arranged for a confidential informant to purchase cocaine from Beno at his residence on two different occasions. *Id.* at 923. Beno was then convicted of two counts of dealing in cocaine and one count of maintaining a common nuisance. *Id.* During the sentencing hearing, Beno was sentenced to the maximum term of imprisonment on each of the three convictions with each term to be served consecutively, for a total of seventy-four years imprisonment. *Id.*

After accepting transfer, our supreme court determined Beno's sentence to be manifestly unreasonable. Specifically, it found that, although the trial court properly sentenced Beno to the maximum term on each count, the court erroneously ordered the sentences to be served consecutively. *Id.* at 924. In reaching its conclusion, the court noted that, although a trial court has discretion to impose both maximum and consecutive sentences, where a defendant is enticed by the police to commit nearly identical crimes as a result of a police sting operation, consecutive sentences are inappropriate. *Id.*

Similar to the defendant in *Beno*, Hendrickson was also enticed by the police to make additional buys as part of a sting operation. In particular, the police sent the same confidential informant to purchase drugs from Hendrickson on five occasions within four months. As a result, Hendrickson was convicted of five counts of drug related offenses and sentenced to both maximum and consecutive sentences. Because Hendrickson's convictions were the result of a sting operation in which the police were able to hook Hendrickson for additional crimes with each subsequent sale, consecutive sentences are inappropriate.

We reach this conclusion despite the dicta in *Beno* in which the court suggested that if Beno "had provided a different type of drug during each buy, the consecutive sentences imposed might seem more appropriate." *Id.* Here, it is unrefuted that Hendrickson's convictions were based on four different drugs. However, the purpose of *Beno* in prohibiting consecutive sentences when the police entice additional drug buys, applies whether or not different drugs are involved. Therefore, we conclude that the holding in *Beno* is applicable even if the defendant provides a different type of drug during additional buys. As a result, Hendrickson's sentence is manifestly unreasonable. We, therefore, remand to the

trial court to enter concurrent sentences on all of his convictions.

## II. Restitution

Next, Hendrickson argues that the trial court improperly ordered him to pay restitution to the UDTF for the amount of money used to conduct the drug purchases. Specifically, Hendrickson argues that, because the UDTF knowingly and voluntarily expended money in order to acquire evidence, it was not entitled to restitution. We disagree.

■ A defendant may be required to make restitution for property damages incurred by a victim as a result of his crime. IND.CODE § 35–50–5–3(a)(1). A state entity may be considered a "victim" under the restitution statute. *Judge v. State,* 659 N.E.2d 608, 613 (Ind.Ct.App.1995).

■ Here, the record reveals that, as a result of the defendant's drug sales, the UDTF lost several hundred dollars which were used by the confidential informant to execute the drug purchases. Therefore, it was entitled to restitution from Hendrickson under the statute.

Nevertheless, Hendrickson asks us to follow authority from other jurisdictions which precludes a state entity from receiving restitution when the entity voluntarily expends money in order to obtain evidence during a criminal investigation. However, nothing in I.C. 35–50–5–3 prevents a State from receiving restitution under such circumstances. Rather, we find that requiring Hendrickson to pay the UDTF for the buy money expended during the sting operation advances Indiana's public policy of ensuring that vic-

tims are reimbursed and defendants are prevented from being unjustly enriched by their criminal acts. Therefore, the trial court properly ordered Hendrickson to reimburse the UDTF for the money used in the drug operation.

## III. Reasonable Doubt

Finally, Hendrickson contends that the trial court improperly instructed the jury regarding reasonable doubt. Specifically, he claims that the Federal Judicial Center's pattern jury instruction [5] permitted the jury to convict him based upon a standard of proof less than "beyond a reasonable doubt" in violation of Article I, § 19 of the Indiana Constitution.

■ Initially, we note that Hendrickson failed to object to the reasonable doubt instruction when it was tendered as a preliminary instruction. Therefore, he has waived this issue on appeal. *See Phillips v. State,* 496 N.E.2d 87, 89 (Ind.1986) (failure to object to instruction when initially tendered results in waiver).

■ Notwithstanding waiver, however, Hendrickson's contention still fails. In a recent decision, our supreme court explicitly authorized and recommended that the Indiana trial courts use the Federal Judicial Center's pattern jury instruction. *See Winegeart v. State,* 665 N.E.2d 893, 903 (Ind. 1996) (encouraging Indiana trial courts to use the Federal Judicial Center's pattern jury instruction). In light of this endorsement, we cannot conclude that the instruction violates Art. I, § 19 of the Indiana Constitution. Thus, we find no error.[6]

---

**5.** The Federal Judicial Center's pattern jury instruction reads as follows:

[T]he government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty,

and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you [should] find [him/her] guilty. If on the other hand, you think there is a real possibility that [he/she] is not guilty, you [should] give [him/her] the benefit of the doubt and find [him/her] not guilty. Federal Judicial Center, Pattern Criminal Jury Instructions 17–18 (1987).

**6.** In his reply brief, Hendrickson also contends that the State failed to address his allegation that the reasonable doubt instruction violated his right under the Indiana Constitution and, there-

## CONCLUSION

In summary, we hold that a trial court may not impose maximum and consecutive sentences for multiple convictions resulting from a police sting operation merely because the defendant provided a different type of drug during each buy. Additionally, we conclude that the trial court properly ordered Hendrickson to pay restitution to the UDTF. Finally, we hold that the Federal Judicial Center's proposed instruction regarding reasonable doubt does not violate the Indiana Constitution.

Accordingly, we remand with instructions to enter concurrent sentences on all of Hendrickson's sentences. Further, upon Hendrickson's request, we order the trial court to either vacate Hendrickson's monetary fines or make an express statement that he shall not be imprisoned for failing to pay them. *See Whitehead v. State*, 511 N.E.2d 284, 296 (Ind.1987) (when fine is imposed upon indigent, court must expressly state that defendant shall not be imprisoned for failing to pay fine), *cert. denied*, 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773.

Judgment affirmed in part and reversed in part and remanded for proceedings not inconsistent with this opinion.

NAJAM and RILEY, JJ., concur.

---

fore, the State waived any argument on this issue. Thus, according to Hendrickson, he is only required to make a prima facie showing of error in order to prevail on this issue. Initially, we note that the State properly addressed this issue on Indiana Constitutional grounds by relying on the Indiana Supreme Court's recommendations in *Winegeart*. Furthermore, even if the State had waived its argument on this issue, Hendrickson still would not prevail because he failed to make a prima facie showing that the trial court's instruction was erroneous.