# FOR PUBLICATION

APPELLANT PRO SE:

**JIM A. EDSALL**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Feb 18 2013, 9:21 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

JIM A. EDSALL,                     )
                                   )
    Appellant-Defendant,           )
                                   )
        vs.                    )     No. 57A03-1205-CR-240
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.            )

APPEAL FROM THE NOBLE SUPERIOR COURT
The Honorable Robert S. Kirsch, Judge
Cause No. 57D01-0608-FA-7

**February 18, 2013**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Jim A. Edsall ("Edsall") pleaded guilty in January 2008 to five counts of Class A felony delivery of methamphetamine[1] and one count of Class A felony conspiracy to manufacture methamphetamine.[2] In this belated appeal, Edsall raises two sentencing issues that we restate as:

I.      Whether the trial court's imposition of six concurrent thirty-year terms of imprisonment at the Indiana Department of Correction ("IDOC") was either an abuse of discretion or inappropriate based on the nature of the offense and character of the offender; and

II.     Whether the trial court exceeded its statutory authority when it ordered restitution as part of Edsall's sentence.

We affirm in part and reverse in part.

**FACTS AND PROCEDURAL HISTORY**

This is Edsall's second appeal to this court. On August 3, 2006, the State charged Edsall with five counts of Class A felony delivery of methamphetamine and four counts of Class A felony conspiracy to manufacture methamphetamine. On January 4, 2008, the parties appeared for a guilty plea hearing and filed a plea agreement ("Plea Agreement"), in which Edsall agreed to plead guilty to five counts of Class A felony delivery of methamphetamine and one count of Class A felony conspiracy to manufacture methamphetamine, and the State agreed to dismiss the remaining charges. With regard to sentencing, the Plea Agreement provided:

> Upon the Defendant's plea of guilty to Counts 1, 3, 4, 5, 7 and 9 he shall receive a concurrent maximum sentence of thirty (30) years in IDOC and the parties will argue all terms at sentencing.

[1] *See* Ind. Code § 35-48-4-1.

[2] *See* Ind. Code §§ 35-49-4-1, 35-41-5-2.

*Appellant's App.* at 42. The Plea Agreement stated that the sentence imposed would be served consecutive to Edsall's sentence from a prior Michigan conviction. The trial court advised Edsall of his rights, including the range of penalties. Specifically, the trial court told Edsall that the term of imprisonment for a Class A felony ranges from twenty to fifty years with the advisory term being thirty years. The trial court also told Edsall that for each count to which he was pleading guilty there was a potential fine from zero to ten thousand dollars. There was no mention of restitution at the guilty plea hearing. Following examination of Edsall under oath to establish a factual basis, the trial court accepted the Plea Agreement, ordered the preparation of a presentence investigation report ("PSI"), and set the matter for a sentencing hearing.

In January 2008, the probation department filed Edsall's PSI with the trial court. The victim's impact statement portion of the PSI stated, "To date, a restitution request has not been received from I.M.A.G.E.[3] Drug Task Force; they plan to submit a restitution amount to the prosecutor's office." *Id.* at 64. Thereafter, at the February 8, 2008 sentencing hearing, the State presented Exhibit A, entitled Edsall Investigation Costs, a copy of which had been provided earlier that morning to Edsall's counsel. The trial court asked Edsall's attorney if there was "any argument or objection" to the total restitution amount, which was $19,581.40, and Edsall's counsel responded, "at this point I certainly won't stipulate to the amount," but did not pose any objection to the exhibit or the matter of restitution being sought. *Tr.* at 81.

---

[3] I.M.A.G.E. stands for Image Multi Agency Group Enforcement. *Appellant's App.* at 14.

3

Thereafter, the State presented the testimony of Steuben County Sheriff's Deputy Tim Troyer ("Deputy Troyer"), who testified about the undercover operation in which he and at least four other law enforcement officers infiltrated, over a fifty-seven-day period, Edsall's manufacturing operation. Deputy Troyer testified that Edsall's operation was sophisticated and the largest he has ever seen in his twenty-one years of law enforcement experience. As part of the undercover operation, Deputy Troyer, known to Edsall as "Hawk," agreed to provide pseudoephedrine pills, or "red things," to Edsall, who would then give a portion of the finished product back to Hawk. *Tr.* at 89, 91, 94. According to testimony, Deputy Troyer provided a total of 16,308 red pills, in 96-count boxes, to Edsall during the investigation. *State's Ex.* A. Walgreens Pharmacy donated 5,520 outdated pills, and undercover officers purchased 10,788 pills at pharmacies. Exhibit A included the cost incurred to purchase the pills, and the expenses and wages of those involved. Exhibit A was admitted without objection. *Tr.* at 106.

Following the presentation of that evidence, counsel presented argument to the trial court regarding sentencing. Edsall's counsel expressed "concern" about the requested restitution, questioning the extent and scope of the police conduct in the undercover investigation, but he did not expressly object to the restitution request and asked the trial court to impose an executed sentence of fifteen years. *Tr.* at 150. The State, in turn, responded that the large-scale investigation was because Edsall's manufacturing scheme was "enormous" and "bigger than we've ever seen" in the surrounding four-county area. *Id.* at 154. The State asked the trial court to impose the maximum allowed under the plea

4

agreement, thirty years, and requested the court to order "restitution figures as laid out." *Id.* at 157.

The trial court identified aggravators and mitigators and determined that the "aggravating circumstances . . . completely outweigh the mitigating circumstances." *Id.* at 158. It sentenced Edsall to concurrent sentences of thirty years on each of the six counts, to be served consecutive to Edsall's Michigan sentence. The trial court also entered restitution judgment in the amount of $19,581.40 and imposed a $2,000.00 fine. Edsall's attorney asked the court for a reasonable period of time upon his release from Indiana Department of Correction for Edsall to take care of his financial obligations.

In August 2008, Edsall filed a pro se petition for post-conviction relief. Thereafter, in August 2011, an attorney filed an appearance on Edsall's behalf and filed a motion for permission to file a belated notice of appeal. In September 2011, the trial court denied his request to file a belated notice of appeal. Edsall appealed that decision to this court, and we reversed by unpublished decision, finding that the trial court abused its discretion when it denied his motion for permission to file a belated notice of appeal. *Edsall v. State*, No. 57A03-1110-CR-462 (Ind. Ct. App. Apr. 11, 2012). Having received that permission, Edsall filed this appeal.

## DISCUSSION AND DECISION

### I. Sentencing

Edsall argues that the trial court abused its discretion by considering improper aggravating circumstances and failing to consider mitigating ones, and he also argues that the

sentence was inappropriate based on the nature of the offense and character of the offender.

Initially, we must determine whether Edsall may appeal his sentence. A plea agreement in which the trial court has discretion over the length of the sentence is referred to as an "open plea." *Bowling v. State*, 960 N.E.2d 837, 841 (Ind. Ct. App. 2012) (citing *Johnson v. State,* 898 N.E.2d 290, 291 (Ind. 2008)), *trans. denied*. Where a plea agreement leaves sentencing to the trial court's discretion, a defendant is entitled to contest on direct appeal the merits of a trial court's sentencing decision. *Id*. (citing *Collins v. State,* 817 N.E.2d 230, 231 (Ind. 2004)). This includes a plea agreement wherein a defendant agrees to a sentencing cap or range. *Id*. However, our Supreme Court has held that a defendant can waive the right to appellate review of his sentence as a part of a written plea agreement as long as such waiver is made knowingly and voluntarily. *Id*.

Here, in exchange for Edsall's guilty plea to five charges of Class A felony delivery of methamphetamine and one charge of Class A felony conspiracy to manufacture methamphetamine, the State dismissed the other three Class A felony charges and agreed to a thirty-year cap on the executed portion of his sentence. The Plea Agreement stated that Edsall "shall receive a concurrent maximum sentence of thirty years in IDOC and the parties will argue all terms at sentencing." *Appellant's App*. at 42. Although the Plea Agreement's use of the words "shall receive" a term of thirty years initially suggests that the terms of imprisonment was "fixed" and non-appealable, the Plea Agreement also indicated "the parties will argue all terms at sentencing," thereby leaving some discretion to the trial court. *Appellant's App*. at 42.

6

In line with this trial court discretion, counsel for each party argued for what he believed to be an appropriate sentence length, with Edsall's counsel arguing for imposition of an executed sentence of fifteen years, and the State arguing for imposition of "the thirty years." *Tr.* at 150, 157. After considering the aggravating and mitigating circumstances, the trial court determined that Edsall's convictions and the circumstances "warrant[] an executed sentence equivalent to the advisory sentence for a Class A Felony *which is the maximum called for* in the parties' Plea Agreement." *Appellant's App.* at 47 (emphasis added). Based on these facts and circumstances, we believe that the Edsall's plea was an "open plea," and Edsall is entitled to appeal his sentence.

## A.     Abuse of Discretion

Edsall argues that the trial court's sentence was an abuse of discretion. A trial court's sentencing decisions are discretionary and entitled to "considerable deference" by the appellate courts. *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008). A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all"; (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons"; (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration"; or (4) considers reasons that "are improper as a matter of law." *Anglemyer v. State,* 868 N.E.2d 482, 490-91 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007). However, the relative weight or value assignable to reasons properly found, or

7

those which should have been found, is not subject to review for abuse of discretion. *Id.* at 491.

Here, the trial court considered the mitigating circumstance that Edsall pleaded guilty, and it considered as aggravating the following circumstances: Edsall had a history of criminal or delinquent behavior; he committed these offenses while on release for a similar charge in Michigan; the extent of Edsall's involvement in the methamphetamine manufacturing business and the quantity produced by his operation; and Edsall committed the offense in the presence of children under eighteen years of age. *Appellant's App*. at 47.

In this appeal, Edsall argues that the trial court failed to consider as an additional mitigating circumstance that "the State initiated the crime[.]" *Appellant's Br*. at 14. Where a defendant alleges that a trial court has failed to find a particular mitigating circumstance, it is the defendant's burden to establish that the mitigating evidence is both significant and clearly supported by the record. *Davis v. State*, 971 N.E.2d 719, 724 (Ind. Ct. App. 2012), *trans. denied*. Edsall claims that the trial court should have considered as mitigating that he "did not submit" to the undercover officer's first two offers to provide him with pseudoephedrine pills. *Appellant's Br*. at 14. To the extent that Edsall suggests that the trial court erred by not finding this to be a mitigating circumstance, we disagree. A trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. *Rogers v. State,* 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied* (2008). The I.M.A.G.E. Drug Task Force was investigating what it suspected was a large-scale

8

methamphetamine manufacturing operation involving a number of individuals, and as part of that process, it offered to provide Edsall with pseudoephedrine. We agree with the State that "[t]he police activity … simply does not constitute a substantial mitigating factor for sentencing purposes." *Appellee's Br*. at 11. We find no trial court error.

Turning to the matter of aggravators, Edsall claims that the trial court used irrelevant and inaccurate aggravating testimony when it sentenced him. *Appellant's Br*. at 15-18. Edsall refers to the sentence hearing testimony of Deputy Troyer. During Deputy Troyer's testimony, he explained that, at some point in time after Edsall had been arrested, Deputy Troyer received a phone call from an individual that he believed, by voice, to be Edsall, who stated to Deputy Troyer that "this was all a conspiracy" of the county government to target him and that the judges involved were "child molesters." *Tr*. at 97-98.

Edsall also argues that there was inaccurate testimony presented concerning the number of children present at the residence during the manufacturing of the methamphetamine and the estimated total amount of methamphetamine that Edsall could have manufactured over the course of a year, given the large quantity of pills and number of individuals involved. That is, the State presented evidence of what might have occurred over a 365-day period.

Edsall argues that the above testimony was irrelevant, inaccurate, and intended to cause prejudice against him and that we should remand the case for resentencing. We decline his request to do so. First, there is no indication that the trial court considered the alleged inaccurate and irrelevant testimony when it sentenced Edsall, and Edsall has not

9

proved otherwise. Second, Edsall does not challenge at least two of the trial court's aggravating circumstances, namely his criminal history and the fact that when he committed the present offenses, he was out on bond for a similar criminal charge that he faced in Michigan. These alone are valid aggravating circumstances that support the trial court's sentencing decision. *See* Ind. Code § 35-38-1-7.1(a)(6) (committing crime while on probation is proper aggravating circumstance); *Deloney v. State*, 938 N.E.2d 724, 732 (Ind. Ct. App. 2010), *trans. denied* (2011) (defendant's criminal history is valid aggravating circumstance); *Owens v. State*, 916 N.E.2d 913, 917 (Ind. Ct. App. 2009) (single aggravator may be sufficient to sustain sentence). We find no support for the claim that the trial court abused its discretion when it sentenced Edsall.

### B. Appropriateness

Edsall claims his sentence is inappropriate and should be revised. Under Appellate Rule 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. "[W]hether we regard a sentence as appropriate . . . turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell,* 895 N.E.2d at 1224. Under appropriateness review, the question is not whether another sentence would be more appropriate; rather, the question is whether the sentence imposed was inappropriate. *Steinberg v. State*, 941 N.E.2d 515, 535 (Ind. Ct. App. 2011), *trans. denied*.

With regard to the nature of the offense, Edsall explains that, over a thirty-two-day span of time, the State offered him around 11,000 pseudoephedrine pills, which is considerably more than he could have purchased on his own because the law places restrictions on the quantity of pseudoephedrine that a person may purchase in a given time frame. Therefore, he argues, the State "had to break it's [sic] own laws to facilitate the quantity and extent of this crime." *Appellant's Br*. at 19. He continues that the trial court failed to consider that "the only way for [him] to commit a [sic] offense of this extent and nature was with the State's assistance." *Id*. at 21. Although Edsall claims that he is not "blaming the State," we find that this is precisely what he is attempting to do. *Id.* The record before us reveals that the trial court properly considered that Edsall was running a large-scale methamphetamine manufacturing and distribution operation that involved several other individuals and that, in exchange for receiving large quantities of pseudoephedrine from an undercover officer, he would in turn provide a percentage of finished methamphetamine product to him. The nature of the offense supports the trial court's imposition of the advisory thirty-year sentence for each offense. Ind. Code § 35-50-2-4 (advisory sentence for Class A felony conviction is thirty years).

With regard to the character of the offender, Edsall advises that he does not have a juvenile record, and "except for a couple misdemeanors has [led] a crime free life." *Appellant's Br*. at 22. With that latter proposition, we disagree. Edsall has a history of illegal substance abuse. Also, Edsall had violated his probation in the past, and when he committed the current crimes he was released on bail for Michigan charges of operating a

11

methamphetamine lab and possession of ephedrine. *See Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied* (committing offenses while on probation is substantial consideration of assessment of character). While Edsall has successfully maintained consistent self-employment as a farmer since graduating from high school in 1981, he had ready access to anhydrous ammonia through his farming operations and unfortunately used that access to facilitate his methamphetamine manufacturing enterprise. Edsall has failed to persuade us that either his character or the nature of his offenses warrants revision of his sentence.

## II. Restitution

Edsall claims that the trial court erred when in its sentencing order it ordered him to pay restitution, arguing that there was no statutory authority or factual basis to do so. The principal purpose of restitution is to vindicate the rights of society and to impress upon the defendant the magnitude of the loss the crime has caused. *Pearson v. State*, 883 N.E.2d 770, 772 (Ind. 2008); *Bockler v. State*, 908 N.E.2d 342, 348 (Ind. Ct. App. 2009) (restitution is means of impressing upon defendant magnitude of loss he caused). Restitution also serves to compensate the offender's victim. *Pearson*, 883 N.E.2d at 772. A state entity may be considered a "victim" for purposes of restitution. *Bockler*, 908 N.E.2d at 348.

Indiana Code section 35-50-5-3(a) governs restitution and provides in relevant part:

> In addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation, or without placing the person on probation, order the person to make restitution to the victim of the crime, the victim's estate, or the family of a victim who is deceased. The court shall base its restitution order upon a consideration of:

12

(1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate);

(2) medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime;

(3) earnings lost by the victim; and

(4) funeral, burial, or cremation costs incurred by the family or estate of a homicide victim as a result of the crime.

"[A] trial court may order restitution as part of a defendant's sentence wholly apart from probation." *Pearson*, 883 N.E.2d at 772-73; *see also*, *Miller v. State,* 502 N.E.2d 92, 95 (Ind. 1986) ("[O]rder of restitution is as much a part of a criminal sentence as a fine or other penalty.")  When restitution is ordered as part of an executed sentence, an inquiry into the defendant's ability to pay is not required. *Pearson*, 883 N.E.2d at 773.  In such a situation, restitution is merely a money judgment, and a defendant cannot be imprisoned for non-payment.  Ind. Code § 35-50-5-3(b); *Pearson*, 883 N.E.2d at 773.

Generally, an order of restitution is within the trial court's discretion, and it will be reversed only upon a finding of an abuse of that discretion.  *Bockler*, 908 N.E.2d at 348 (citing *Green v. State,* 811 N.E.2d 874, 877 (Ind. Ct. App. 2004)).  An abuse of discretion occurs when the trial court misinterprets or misapplies the law.  *Id.*

The State argues that Edsall waived any claim concerning the trial court's order of restitution because he did not object at the trial court level.  We recognize that the State's intention to seek restitution was mentioned a number of times, including in the PSI, and the specific amount of restitution was discussed at length during the sentencing hearing.  No objection was posed.  Nevertheless, we conclude that the issue was not waived.  Here, where

the trial court ordered restitution as part of Edsall's sentence, we treat this question like any other claim that a trial court has violated its statutory authority in imposing sentence, which may be raised for the first time on appeal. *Rich v. State*, 890 N.E.2d 44, 48 (Ind. Ct. App. 2008) (appellate courts will review trial court's restitution order even where defendant did not object, because restitution order is part of sentence and appellate courts have duty to determine legality of sentences), *trans. denied*; *Green*, 811 N.E.2d at 877 (citing *Abron v. State,* 591 N.E.2d 634, 638 (Ind. Ct. App. 1992), *trans. denied*).

That brings us back to the threshold question of whether the trial court had authority to order restitution in this case. We conclude it did not. Initially, we note that restitution was not mentioned in any form in the Plea Agreement or at the guilty plea hearing. The general rule is that once an agreement is accepted, the trial court is precluded from imposing any sentence other than that required by the plea agreement. *Sinn v. State*, 693 N.E.2d 78, 80 (Ind. Ct. App. 1998). In *Sinn*, the State argued that the imposition of restitution did not increase the sentence and was not precluded by the plea agreement. This court rejected that argument, finding that the trial court erred in ordering the defendant to pay restitution when the plea agreement contained no provision allowing it. *Id*. Even assuming Edsall's Plea Agreement did not foreclose the trial court's ability to order restitution, as the State asserts, we find that the order of restitution was not appropriate here because the State was not a "victim." In reaching this decision, we examine *Hendrickson v. State*, 690 N.E.2d 765 (Ind. Ct. App. 1998).

In *Hendrickson*, the trial court ordered the defendant to repay funds that a government drug task force officer had used to conduct controlled drug purchases. Hendrickson appealed and challenged the trial court's order of restitution, and we determined that allowing Hendrickson to retain the money would have resulted in unjust enrichment. Specifically, we held, "[R]equiring Hendrickson to pay the [drug task force] for the buy money expended during the sting operation advances Indiana's public policy of ensuring that victims are reimbursed and defendants are prevented from being unjustly enriched by their criminal acts." *Hendrickson*, 690 N.E.2d at 768. Under those facts, the *Hendrickson* court considered the State to be a "victim" within the meaning of Indiana Code section 35-50-5-3(a). *Id*.

Subsequently, in *Green*, a panel of this court further examined the concept of the State as a victim and entitlement to restitution. There, the defendant pleaded guilty to criminal confinement of his girlfriend. In sentencing Green, the trial court had ordered him to pay restitution to the county prosecutor's office because the State's prosecution of Green had required a forensic sexual assault examination of him. In reversing the restitution order, the *Green* appellate court recognized that the State had not expended funds on behalf of the victim of his criminal confinement. It clarified that, in *Hendrickson*, this court did not hold that the State is considered a victim entitled to restitution any time it "elects" to spend money to obtain criminal evidence. *Green*, 811 N.E.2d at 879. "If that were the prevailing rule of law, then the State would seek restitution for any and all of its discovery costs." *Id*. We further explained, "[T]he restitution in *Hendrickson* was proper because to allow the defendant to retain money that the drug task force had used during a controlled drug buy

15

involving the defendant would, in part, result in unjust enrichment." *Green*, 811 N.E.2d at 879.

We find *Green* applicable here, where the trial court ordered Edsall to repay over $19,000 that the drug task force spent during the course of the undercover criminal investigation of Edsall, including for the purchase of over 10,000 pseudoephedrine pills and the wages and expenses of law enforcement from various agencies. Although Edsall argues that the restitution amount was excessive, we make no finding today on the amount of the restitution. Rather, we hold that under the facts of this case the State was not a victim as contemplated by the restitution statute, and the trial court's order of restitution was not proper.[4] *Compare Ault v. State*, 705 N.E.2d 1078, 1082-83 (Ind. Ct. App. 1999) (where State was entitled to restitution for Medicaid payments that it paid on behalf of infant victim shaken and injured by defendant because it stood in shoes of victim and assumed cost of victim's care).

Affirmed part and reversed in part.

MATHIAS, J., and CRONE, J., concur.

---

[4] Edsall also argues that the restitution order was in error because it included restitution for all counts, some of which had been dismissed under the Plea Agreement. *Appellant's Br.* at 8, 28. The State concedes that to the extent the trial court's restitution order included payments for pills used for charges that were ultimately dismissed under the Plea Agreement, those expenditures may not be included in the restitution order. *Appellee's Br.* at 18. Because we find that the ordered restitution was not proper, we do not address Edsall's assertion that expenses incurred for dismissed counts were included in the restitution order.