## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

08/31/2017, 9:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Bates
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark A. Williams,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

August 31, 2017

Court of Appeals Case No.
45A03-1702-CR-346

Appeal from the Lake Superior Court

The Honorable Diane Ross Boswell, Judge

Trial Court Cause No.
45G03-1311-MR-9

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Mark A. Williams (Williams), appeals his sentence following his conviction for two Counts of murder committed while perpetrating a robbery, felonies, Ind. Code § 35-42-1-1(2) (2013).

We affirm.

# ISSUES

Williams raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its sentencing discretion in its consideration of aggravating and mitigating circumstances; and

(2) Whether Williams' sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

On November 1, 2013, Williams went to the Gary, Lake County, Indiana, home of Leviticus Dupree (Leviticus) and Toshiba Dupree (Toshiba). Wielding a knife, Williams took a shotgun belonging to Leviticus. In the course of stealing the shotgun, Williams repeatedly stabbed both Leviticus and Toshiba. Neither Leviticus nor Toshiba survived their injuries.

On November 10, 2013, the State filed an Information, charging Williams with Counts I and II, murder, felonies, I.C. § 35-42-1-1(1); Counts III and IV, murder while perpetrating a robbery, felonies, I.C. § 35-42-1-1(2); Counts V and VI, robbery resulting in serious bodily injury, Class A felonies, I.C. §35-42-5-

1(1); and Count VII, auto theft, a Class D felony, I.C. § 35-43-4-2.5(b)(1). The Information was amended on November 19, 2013, to add Counts VIII and IX, armed robbery, Class B felonies, I.C. § 35-42-5-1(1); as well as a habitual offender enhancement as Count X.

[6] On September 29, 2016, Williams entered into a plea agreement with the State, pursuant to which he agreed to plead guilty but mentally ill to Counts III and IV, murder in the perpetration of a robbery, felonies. The parties settled on a sentencing cap of fifty-five years for each Count. In exchange for Williams' plea, the State moved for the dismissal of the remaining charges. The same day, the plea agreement was filed with the trial court, and a hearing was conducted. The trial court determined that Williams had entered into the plea agreement knowingly and voluntarily, and the trial court found that there was a factual basis to support the guilty but mentally ill plea. On January 19, 2017, the trial court held another hearing and accepted the plea agreement, entering a judgment of conviction for two Counts of murder committed while perpetrating a robbery, felonies. The trial court subsequently sentenced Williams to consecutive terms of fifty-five years for each charge, fully executed in the Indiana Department of Correction (DOC).

[7] Williams now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Abuse of Sentencing Discretion*

[8] Williams claims that the trial court abused its discretion by improperly considering certain aggravating circumstances and failing to consider certain mitigating circumstances. Sentencing decisions are a matter of trial court discretion and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490, *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). It is an abuse of discretion if the trial court's decision "is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.* (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006)). To protect "against arbitrary and capricious sentencing" and "provide[] an adequate basis for appellate review," trial courts are required, for all felony offenses, to enter sentencing statements that "include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence." *Id.* at 489-90. A trial court "may impose any sentence within the statutory range without regard to the existence of aggravating or mitigating factors." *Id.* at 489. If the trial court "'finds' the existence of 'aggravating circumstances or mitigating circumstances'" then the trial court is required to give 'a statement of the court's reasons for selecting the sentence that it imposes.'" *Id.* at 490 (quoting I.C. § 35-38-1-3(3)).

[9] On appeal, a trial court may be found to have abused its discretion by failing to enter a sentencing statement at all; entering a sentencing statement that explains its reasons for imposing a sentence where such reasons are not supported by the

record or are improper as a matter of law; or entering a sentencing statement that omits reasons which are clearly supported by the record and advanced for consideration. *Id.* at 490-91. A trial court may not be said to have abused its discretion by failing to properly weigh aggravating and mitigating factors. *Id.* at 491. If we find that the trial court has abused its sentencing discretion, our court will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.*

[10] The crime of felony murder is subject to a fixed term of imprisonment "between forty-five (45) and sixty-five (65) years, with the advisory sentence being fifty-five (55) years." I.C. § 35-50-2-3(a) (2013). Here, the trial court imposed the advisory sentence for each felony murder charge, which was the maximum term allowed under Williams' plea agreement. In determining Williams' sentence, the trial court found that consecutive terms were warranted "as there were two specific victims in this case and there needs to be a sentence for each victim." (Sentencing Tr. Vol. II, pp. 83-84). As an aggravating circumstance, the trial court identified Williams' prior history, specifically the fact that "he is a repeat offender of this crime, and due to his mental condition, he is likely to repeat this crime." (Sentencing Tr. Vol. II, p. 84). The trial court also found it aggravating that Williams' victims "were in essence close family members to" Williams—*i.e.*, that he was in a position of trust with the victims, and "the crime was brutal and heinous and certainly beyond what was necessary. These pictures [of the crime scene] are just gruesome." (Sentencing Tr. Vol. II, p. 84).

In its written sentencing order, the trial court subsequently clarified that it found no mitigating circumstances. Williams now contends that the trial court abused its discretion by improperly repeating the same aggravating factor in multiple variations and by failing to identify any mitigating circumstances.

### A. *Aggravating Circumstances*

Williams argues that three of the trial court's identified aggravating factors "are variations on a single theme: his prior criminal history." (Appellant's Br. p. 9). In its written sentencing order, the trial court listed Williams' "prior criminal history"; the fact that Williams "is a repeat offender"; and that "[t]here is great risk that [Williams] will commit another crime of this nature because of his prior criminal history and his mental illness" as separate aggravating circumstances. (Appellant's Conf. App. Vol. II, p. 103). Without citing any authority that supports his position, Williams asserts that it was improper for the trial court to "re-us[e] the prior criminal history aggravator three times in order to justify the sentence it imposed." (Appellant's Br. p. 10).

We find no merit in Williams' argument. Williams has a serious criminal history, including a prior conviction for voluntary manslaughter. *See* I.C. § 35-38-1-7.1(a)(2) (stating that the trial court may consider that "[t]he person has a history of criminal or delinquent behavior" as an aggravating circumstance). Similar to the instant case, in November of 1996, Williams stabbed a woman to death and subsequently pled guilty; he received a sentence of thirty years and was released from the DOC in 2012. Less than two years later, he stabbed the victims in the current case. A single aggravating circumstance is sufficient to

support an enhanced sentence, and even "[i]f one aggravating factor is improperly applied, the sentence is still valid as long as 'other valid aggravators exist[] and the invalid aggravator did not play a significant role in the trial court's decision.'" *Coy v. State*, 999 N.E.2d 937, 947 (Ind. Ct. App. 2013). Thus, Williams' criminal history, standing alone, is a valid aggravating circumstance that would support the trial court's sentencing decision. *Edsall v. State*, 983 N.E.2d 200, 206 (Ind. Ct. App. 2013). Furthermore, Williams does not challenge the validity of the other aggravating circumstances—*i.e.*, that he was in a position of trust with Leviticus and Toshiba and that the circumstances of the crime were particularly heinous. Moreover, while Williams received the maximum sentence permitted under his plea agreement, we note that his sentence is still technically the advisory term for murder under the law, and the fact that there are valid aggravating circumstances supports the imposition of consecutive sentences. *See Gross v. State*, 22 N.E.3d 863, 870 (Ind. Ct. App. 2014), *trans. denied*. Accordingly, we find no abuse of discretion in the trial court's identification of aggravating circumstances.

### B. *Mitigating Circumstances*

Williams also contends that the trial court abused its discretion by identifying no mitigating circumstances. A trial court is under no obligation "to accept a defendant's claim as to what constitutes a mitigating circumstance." *Weedman v. State*, 21 N.E.3d 873, 893 (Ind. Ct. App. 2014), *trans. denied*. "Where the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the

factor does not exist." *Phelps v. State*, 969 N.E.2d 1009, 1019 (Ind. Ct. App. 2012), *trans. denied*. "A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Weedman*, 21 N.E.3d at 893.

[14] Williams first argues that the trial court should have identified his guilty plea in mitigation. A trial court "should be 'inherently aware of the fact that a guilty plea is a mitigating circumstance.'" *Caraway v. State*, 959 N.E.2d 847, 853 (Ind. Ct. App. 2011) (quoting *Francis v. State*, 817 N.E.2d 235, 237 n.2 (Ind. 2004)), *trans. denied*. Thus, even where, as in the current case, the defendant does not specifically raise his guilty plea as a mitigating circumstance before the trial court, the defendant is not precluded from arguing on appeal that the trial court abused its discretion in failing to find the plea as a mitigating circumstance. *Id.* Notwithstanding that a guilty plea should be considered in mitigation, it is well established that "the significance of a guilty plea as a mitigating factor varies from case to case. For example, a guilty plea may not be significantly mitigating when it does not demonstrate the defendant's acceptance of responsibility, or when the defendant receives a substantial benefit in return for the plea." *Anglemyer*, 875 N.E.2d at 221 (internal citations omitted).

[15] In this case, the significance of Williams' guilty plea is slight. As Williams made clear during the sentencing hearing, although he admitted that he took part in the murder of Toshiba, he blamed his co-defendant as the primary perpetrator in carrying out the crimes. Williams claimed that his mental illness

makes him susceptible to being "easily coaxed," so he asked the trial court to consider that "his role . . . was of a lesser quality than what the [c]ourt may at first glance have assumed that it was." (Sentencing Tr. Vol. II, p. 80). Also, despite the evidence indicating that the victims treated Williams like a member of their family, nothing in the record suggests that Williams ever expressed any remorse for the slayings. Moreover, in exchange for pleading guilty to two Counts of felony murder, the State agreed to dismiss eight other charges, including a habitual offender enhancement. It also appears that there was substantial evidence against Williams.[1] Thus, his decision to plead was pragmatic, and he received a substantial benefit.

[16] Williams also argues that the trial court abused its discretion by failing to consider his "clearly documented" mental illness as a mitigating circumstance. (Appellant's Br. p. 11). "Mental illness is not necessarily a significant mitigating factor; 'rather, [it] is a mitigating factor to be used in certain circumstances, such as when the evidence demonstrates longstanding mental health issues or when the jury finds that a defendant is mentally ill.'" *Townsend v. State*, 45 N.E.3d 821, 831 (Ind. Ct. App. 2015) (alteration in original), *trans. denied*. "[I]n order for a [defendant's] mental history to provide a basis for establishing a mitigating factor, there must be a nexus between the defendant's

---

[1] Records pertaining to Williams' request for bail indicate that Williams admitted to committing the murders on three separate occasions.

mental health and the crime in question." *Weedman*, 21 N.E.3d at 894 (second alteration in original).

[17] The existence of Williams' mental illness is not in dispute. Pursuant to the plea agreement, the parties agreed that he was guilty but mentally ill at the time he murdered Leviticus and Toshiba. A psychiatrist testified during the sentencing hearing that Williams suffers from schizophrenia, "which goes back decades"; borderline intellectual functioning, "which goes back to the school years obviously"; and "significant drug issues." (Sentencing Tr. Vol. II, pp. 38-39). In addition to the fact that Williams' mental health issues have largely gone untreated throughout his life, excepting some intermittent periods of medication and therapy, his crack-cocaine habit "made his symptoms of psychosis much worse." (Sentencing Tr. Vol. II, p. 40). Williams reported "hearing voices for a very long time predating the first [murder in 1996]." (Sentencing Tr. Vol. II, p. 40). Since his arrest in the present case, Williams has been medicated; yet, he "continues to hear voices." (Sentencing Tr. Vol. II, p. 42). With medicine, the voices are "not as loud" and are "much more easily ignored. They don't make him do things, but technically he's still psychotic even though he's on pretty good sized doses of antipsychotic medication and has been for some years now courtesy of the Lake County Jail." (Sentencing Tr. Vol. II, p. 42).

[18] The trial court did not specifically identify Williams' mental health as a circumstance warranting a mitigated sentence; however, the trial court cannot be said to have disregarded the factor entirely. Rather, the trial court stated that "the fact that [Williams] has mental health issues has been taken into

consideration by the State in capping the sentence at the [fifty-five] years, the advisory sentence." (Sentencing Tr. Vol. II, p. 84). While it is not the role of the State to determine aggravating or mitigating circumstances in fashioning a sentence, it is clear that the trial court acknowledged the impact of Williams' mental health in formulating a sentence, but the trial court declined to find that his mental health should warrant any reduction below the advisory term in light of the abundant aggravating circumstances. This determination was the prerogative of the trial court, and we find no abuse of discretion. Moreover, even if the trial court had not taken Williams' mental health into account, we would nevertheless decline to remand for resentencing as the trial court clearly would have imposed the same sentence regardless. *Anglemyer*, 868 N.E.2d at 491.

## II. *Inappropriate Sentence*

Williams also claims that his 110-year sentence is inappropriate. In cases where a trial court imposes a sentence that is authorized by statute, our court may revise the sentence if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Appellate Rule 7(B) provides for sentence review in an "attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Ultimately, "whether we regard a sentence as appropriate at the end of the day turns on our

sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id.* Williams bears the burden of persuading this court that his sentence is inappropriate. *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014).

[20] "[T]he advisory sentence is the starting point [that] our legislature has selected as [an] appropriate sentence for the crime committed." *Richardson v. State*, 906 N.E.2d 241, 247 (Ind. Ct. App. 2009) (citing *Anglemyer*, 868 N.E.2d at 494). Here, pursuant to his plea agreement, Williams' sentence for each of the two Counts of felony murder was capped at the advisory term of fifty-five years, resulting in an aggregate sentence of 110 years. *See* I.C. 35-50-2-3(a). The facts of this case indicate that Williams repeatedly stabbed two close family friends to death in the course of stealing their shotgun. Williams concedes that "[t]here is no denying that this was a serious crime with horrific consequences for all involved." (Appellant's Br. p. 13). Nevertheless, in light of the fact that "the nature of the offense was intertwined with Williams'[] mental illness" and "his intellectual disability," Williams insists that "imposing concurrent sentences would be an appropriate sentence." (Appellant's Br. p. 15).

[21] Turning to his character, we recognize that Williams has a longstanding mental illness, as the result of which, he hears voices that encourage him to hurt himself and others. Past efforts to treat Williams have been unsuccessful as he refused to take his medication and would not submit to hospitalization.

Williams exacerbated the symptoms of his mental illness by abusing crack-cocaine and alcohol. Although Williams functions better with medication and sobriety, he still hears the voices—they are just easier to ignore. In addition, evidence presented during the sentencing hearing provided this court with a glimpse into the abusive and twisted childhood that Williams' endured, and it is nothing short of horrifying. Williams and his surviving siblings have certainly continued suffering into adulthood as a result of being victimized as children at the hands of their father.

[22] Nevertheless, Williams has demonstrated his inability to live among society. At age fifteen, Williams joined a street gang in Gary, Indiana, and he was eventually expelled from high school for fighting. In his early twenties, Williams began smoking crack-cocaine on a daily basis and drinking heavily. In 1996, Williams stabbed a woman to death and was sentenced to thirty years in the DOC. In 2012, Williams was released, and less than two years later, while on parole, Williams committed the instant stabbings. It is clear that Williams requires the structure of incarceration to maintain his mental health treatment and sobriety. He has now taken the lives of three individuals—at least two of whom considered him to be family. We cannot say that his aggregate 110-year sentence is inappropriate.

## CONCLUSION

[23] Based on the foregoing, we conclude that the trial court did not abuse its sentencing discretion by imposing the maximum sentence permitted under Williams' plea agreement, which is the advisory sentence for each Count of

felony murder. We further conclude that Williams' sentence is not inappropriate in light of the nature of the offense and his character.

[24] Affirmed.

[25] Robb, J. and Pyle, J. concur